Our job. All right, moving on to our fifth case this morning. It is Kilburn-Winnie v. Fortville. All right, Mr. Felsen. May it please the court, Stephen R. Felsen for appellants in this case, my co-counsel Stephen Shane, sitting in favor. As the court is aware, I'm sure, there were two cases here. We call them Fortville I and Fortville II. There's one case on appeal, but it's based, the decisions were based upon what happened in the first case. The merits of the first case were much simpler than this one, and none of it was ever reached, of course. The merits of the first case was municipal utility cutoffs, in this case water and sewage, without a hearing. And the Supreme Court long ago decided that some kind of process was necessary before a municipal state actor does that under 1983 and due process. Where is Fortville? Fortville is in Indiana. Yeah, I know. Hey, that's pretty big. What part of Indiana? I've never been there. From the song, you know, what part of Indiana do you come from? I'm going to guess and say south of Indianapolis. That's the best I can do. But we have some people here. It's south of South Bend and north of North Avenue. I won't take a chance on that. And we have some people that probably can tell you exactly where it is. Well, it doesn't make any difference. Well, I don't think so, no. Counsel, do you concede that the cause of action in Fortville II is the same as Fortville I? No. I kind of read your brief that way, no? No, it's the same as the second preliminary injunction, which we filed in Fortville I, when they changed their policy from no hearing to a long and convoluted hearing, which we claim is unconstitutional. We filed, we already had a most preliminary injunction against the continuing to cut off water without any hearing. We added a second preliminary injunction where we saw their new ordinance. They stopped doing the first one after the lawsuit had gone on a little bit. And they changed their law. They changed the Fortville ordinance. And they said, well, from now on, you have to file this and this and this document. You have to go down to the city council meeting, the town council meeting, and you present that you're due process. We thought that was so complicated, we couldn't even understand it. And we filed a motion for preliminary injunction, which was denied as moot after settling the first case. But does that suggest that then the first case resolved it? Because claim preclusion, of course, will resolve and make final not only those things that are actually litigated, but those things that could have been litigated. Well, this one, it couldn't have been litigated on the original complaint, because none of the plaintiffs had ever had their water cut off on the basis of this new policy. That didn't happen until later. The settlement, when it was finally put in, included class members up to October 31, 2014, because that's the last time Fortville ever cut anybody's water off without a hearing. The new policy took place November or December, somewhere around that, and our clients had their water cut off under the new policy not until February and March, I think, of 2015, and then December 2015. So, no, I don't think it could have been decided. The judge certainly didn't decide it. I don't see how he could have decided it. You were asking the judge to decide it. We were asking for preliminary injunction to have them not cut off anybody's. Right. And then you gave away claims under the new policy in the release, because the release covers claims for loss or damages of any kind whatsoever, known or unknown, arising out of, et cetera. Arising out of the? Arising out of the litigation, including pre-litigation, litigation, and post-litigation activities. Well, doesn't that ñ that was the first language, correct, on page 26 of our brief? This is on page 10 of the release, clause 36, paragraph 36, describing the released claims to include those arising during the litigation and post-litigation having to do with the water shutoff policy of the town of Fortville. And that would seem on its face to include the present claims for water shutoff under the new policy. We went through very carefully in pages 26, 29 of the brief, the three release sentences of paragraph 36 of the settlement agreement, wherever it was you cited it, that's where it is, but it will be found in Doc 29.1 of this case because it was put in. Obviously, it was a release that came in Fortville 1. It was put into this case under Document 29.1. The first sentence of it says, Relating to claims raised in the complaints in this action, which did not include the new policy, which was promulgated later by the town of Fortville in November of 2014. The second operative sentence is on page 27 of our brief, Claim to have violated the due process position provision of the 14th Amendment. Release any and all claims which claims relate to the actions alleged in this case to have violated the due process provision of the 14th Amendment. The action claimed to have violated the provision of the 14th Amendment was to cut off and deprive water without appearing whatsoever. They hadn't done any. They hadn't even instigated their new policy yet. Right. That was during the litigation, so why isn't that covered under the clause that releases claims arising during litigation and post-litigation activities? Well, we didn't have a claim. Having to do with water shut off. We didn't have a claim under the new policy for any party. Well, then why were you asking for preliminary and judgmental relief under that new policy? We're consumer lawyers. Or against that new policy. We're consumer lawyers. When the same entity, which just had cut off hundreds of people's water without a hearing, puts in then a new policy for other people that then they're about to institute in November and December, starting December, whenever it came into play, of 2014, they're about to start cutting off people's water under the new policy. We wanted them to stop. Right. So you're asking for relief against the new policy, and then you resolve that claim in this comprehensive global release. Well, we didn't have a claim. We didn't have a claim. Well, you were asking for relief. We asked for relief. That's the same thing. But didn't you also, I mean, correct me if I have my dates wrong, one of the plaintiffs did allege that in March and April of 2015, that Fortville had terminated their water under the new policy, and the settlement wasn't reached until September of 2015. Well, the settlement was reached in, the settlement included only water cutoffs until October of 2014. It was expressly written only to cover people and claims until 10-31-14 when the old policy, which was no hearing. Where does it say that? I'm going to tell you. The release language is more comprehensive than that. Well, the release language definitely limits the class relief to any class members up to 10-31-14, and you'll find that in DOC 29 in this case, in the DOC number 29 in this case, which is the settlement agreement, and it's definitely Paragraph 36. No, it's not Paragraph 36. The paragraph I'm not sure I can give you right now, but that's the date in the settlement agreement. That's the last person who could be in this class that could have any kind of a claim, and those are the people who signed the release. Both the named plaintiffs and anybody who got their $50 are subject to a release, but only up to 10-31-14 by the agreement of the parties. Well, the release language doesn't have that date limitation. In fact, it's very expansive and covers activities engaged in by the town on water shutoff issues, including pre-litigation, litigation, and post-litigation activities, so it contains no date limitation. If you look at page ID number 136, that's where you will find, on page 4 of the settlement agreement, the cutoff, the limitation of this class settlement to all customers, I'm quoting, of the town of Fortville, Fortville Attorneys and Fortville Water Department, there were three entities, from July 9, 2012, that was statute of limitations going backwards, through October 31, 2014, who had their water service terminated and who paid a reconnection fee to reestablish their water service. Right. That's the definition of the class. That's not a definition of the released claims, and we're all about what was covered by the release here. Well, I understand that, but the parties expressly attempted to – this also gets in and it dovetails into the federal waiver versus contractual waiver when there's a constitutional right involved. As far as we read this thing to be no waiver of future constitutional rights because of that October 31, 2014 date, you can try to infer, if you'd like, and we don't agree, but you could try to infer that, oh, yes, we're waiving anybody, even though we don't know who they are and it probably won't be us. No, you're waiving the rights of the class, and that includes constitutional rights and constitutional violations covered within the scope of the release, and there's no law that prevents that for the class. Well, except the class, and the class only includes people up to – nobody who had their water cut off after October 31 would be in the class. Well, right, but you're representing now two members of the class, one of the named plaintiffs and one of the members of the class, and the question is whether the claims that were covered by this judgment include the present claims. Well, as far as we're concerned, since they didn't know that they would have their water cut off under the new ordinance, neither one of them did, and in fact didn't have them cut off until a year later, one of them, and one four or five months later, there's no way they could have intended to be doing that under the new ordinance, which was something that just hadn't happened, and nobody even knew whether there would be one person cut off. All right, thank you. Your time has expired. Thank you. Mr. Montgomery. Thank you, Judge, and may it please the Court. My name is Travis Montgomery, and I'm here today on behalf of the town of Fortville, and first and foremost, I want to answer the most important question. The town of Fortville is located in the northeast corner of Indianapolis as a suburb in the county. Northeast corner of Indianapolis? It's the northeast suburb of Indianapolis. Ah. Yes, Your Honor. I know where that is. You know where that is? Then you're familiar with Fortville. Yes. Your Honor, I want to answer your question first because I think it was important. You noted or asked my colleague whether or not they conceded that the claims were the same in Fortville I as they were in Fortville II, and it was denied. What the brief actually said is, the operative facts of the complaint in Fortville II are the same as those presented in the second preliminary injunction motion in Fortville I. Indeed, the exact same claim, and as the district court recognized in almost language verbatim to the motion for preliminary injunction in Fortville I, the complaint that was filed by the plaintiffs in this Fortville II action was identical in every way and every respect. It was the same claim that there was a per se due process violation under the 14th Amendment as a result of the policy that was in place. That issue was put before the court in Fortville I, and it was decided as a matter of final judgment for purposes of res judicata. When the parties entered into the settlement agreement, the settlement agreement was approved through the proper procedure under Federal Rule of Civil Procedure 23, and it was entered and incorporated in a final judgment of the court, saying that it was indeed a final judgment and that it was a final appealable order. That's what occurred. When the second lawsuit was filed in this case, it was to bring a claim that had obviously, by all accounts, been settled as a part of Fortville I. There's no question, and the appellants seem to recognize that. The operative facts of the complaint in Fortville II are the same as those raised in the motion for preliminary injunction, the second motion for preliminary injunction, regarding the renewed policy or the new policy that was enacted during the course of litigation. Can you address your opponent's argument about the definition of the class, and if the class was defined as ending at the end of October 2014, how claims that arose after that could still be encompassed within this argument? Absolutely. There is a distinction, I think, that's very important between how we identify members of a class and how we identify the claims that they have brought and that they are releasing as a part of their settlement. The class defines those individuals who are entitled to relief. It does not define the claim that they've raised or the claim that they could have raised. The settlement agreement specifically is what does that, and the court has been right to acknowledge that it is a very broad-based settlement agreement that included not only things that happened prior to the litigation, but also during the litigation, like the enactment of the policy and post-litigation. That defines the claims that were brought. The definition of the class defines those individuals who are, one, entitled to relief under that settlement agreement, but also, more importantly for us, those who are impacted and barred from bringing a second litigation to fight the same issue that they've raised. And so the definition of the class doesn't define the claims that were raised or could have been raised or that were dismissed as a part of the settlement agreement. It defines those individuals who were bound by that settlement agreement, and that clearly includes both of the plaintiffs that are in Fort Bill 2. They both were parties to that initial litigation, one in a representative capacity as the representative of class, and the other as a class member. So there's no doubt, and we've cited a case law that makes that clear and the restatement of judgment, section 41, that makes very clear that when somebody is represented, when their interests are represented by another person and that matter is settled, they are bound by that settlement. That's the case here, and it's particularly the case here when you're dealing with the class action, where the dictates of Rule 23 mandate that a district court be very careful in determining whether or not it's appropriate, fair, and reasonable to agree to a settlement. In fact, as you know, that's the only way that a settlement in a class action matter can actually be approved and finalized, is by the court using the dictates of that rule, applying them to make sure that there has been a fair, adequate, and reasonable settlement. And more importantly, that anything that is clearly illegal, any conduct that would be clearly illegal, does not continue. So inherent in the decision to approve the initial settlement agreement of Fort Will I was a determination by the district court that the issues raised in the second motion for preliminary injunction regarding the newly enacted policy of the town were not clearly illegal, were not clearly in violation of a due process claim. If they had been, it would have been inappropriate to enter that settlement agreement for approval, as the court did. Well, the judge didn't adjudicate that issue in entering final judgment on this stipulation and settlement agreement. The judge just accepted the party's stipulation, which agreed to give that claim against the new policy away for purposes of the class. Now, somebody who moves into the village later, who gets their water turned off under the new policy, is obviously free to challenge it. I would have to agree with that, Your Honor. They would not have been a member of the class. They can certainly argue that they're not bound by it. And it's correct that the court didn't specifically enter a judgment or make a decision about the constitutionality of the new policy per se. All that I mean to say is that as part of the procedure for approving the class action settlement, the court did, in fact, have to determine at the very least that the policy wasn't clearly in violation of due process, otherwise it would have been inappropriate to agree to that settlement. As a final matter, Your Honor, I just want to address, although it's not been addressed yet, the idea of constitutional waiver that was injected into the case by the appellants. As was stated during the initial argument, the class action rules allow for settlement of a class action on exactly the basis it was here, despite the fact that there's a constitutional claim involved. Indeed, the constitutional claim or the right to due process was never waived by either of the plaintiffs in this case. To the contrary, they had the opportunity through Fort Welborn to enforce their due process rights by litigating that matter to a completion that they and the district court saw to be prudent. And they accepted that bargain, so they enforced their rights. They didn't waive anything. They didn't waive any constitutional rights, and that's why the constitutional waiver aspect doesn't come into play when you're looking at res judicata. Res judicata is simply, as the Seventh Circuit has put, borrowing words from the Supreme Court, a rule of public policy and of private peace. And that's exactly what this settlement agreement was also designed to do. As a matter of public policy, it ended the continued litigation of this. It preserved judicial resources. It gave some sense of finality to the litigation and understanding of what was going to happen. And it was meant to protect Fortville from being in the exact situation they find themselves now, here before you, still arguing a case that was resolved years ago. None of those goals have been met here. The goal is res judicata. In fact, the continued litigation of this matter is in defiance of those goals. It doesn't advance public policy, nor does it provide private peace. It doesn't make anything more predictable in the course of judicial proceedings, and it doesn't protect Fortville from being hauled in repeatedly to court to defend against claims that have already been resolved. So based on that, Your Honor, the town of Fortville would respectfully request that the district court's order entering judgment in its favor on basis of res judicata against both of the plaintiffs in this matter be affirmed and that all other appropriate relief be granted. Thank you for your time. Thank you. Mr. Felsen, I think you were out of time, but you can have a minute. If you have anything else to say. Yes, two brief points. Res judicata, the second element of res judicata requires a final judgment on the merits. I understand that the town is putting the two together, the waiver and the res judicata together. I don't think you can do that as a legal matter. Since there was never a final judgment on the merits, I don't think res judicata is appropriate, but I'll go back for one second to the waiver part. Just to point out, the judge only held that one of the parties to this second Fortville II had waived her rights, namely the one who was the named plaintiff in the first case. There's no basis for that ruling in the law. The named class representatives can bargain away the rights of the class, the claims of the class,  it's not necessary that each of the class members individually consent. I understand your point. That brings up the question of whether this is a knowing waiver or not. It doesn't have to be. That whole line of cases, that doctrine is just not in play here. This is a class action, and the named plaintiffs and their counsel, you, could give away those claims on behalf of the class without a knowing and voluntary individual waiver from every class member. That doctrine is not in play here. I understand your point, Your Honor. Of course, we stand by what's written on our brief, and we believe that because of our language and because of the dates that we cited that there was no waiver in this case. Thank you. All right. Thank you. Our thanks to both counsel. The case is taken under advisement.